**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>       v.<br><br>JUAN MANUEL ORTIZ,<br><br>                          Defendant. | Case No. 18-cr-02063-BAS<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 51)** |

On March 19, 2019, the Court sentenced Mr. Ortiz to 77 months in custody. (ECF No. 46.) Both parties had jointly stipulated to this 77-month sentence as part of the plea agreement, a sentence far below the sentencing guideline range. (ECF Nos. 40, 42.) Mr. Ortiz has now served approximately 15 months of that 77-month sentence, and he moves to reduce his sentence to time served because of the risks he faces due to COVID-19. (ECF No. 51 ("Defendant's Motion").) The Government opposes (ECF No. 58 ("Government's Response")), and Mr. Ortiz replies (ECF No. 62 ("Defendant's Reply")). For the reasons stated below, the Court **DENIES** Mr. Ortiz's motion.

//

//

## I. BACKGROUND

Mr. Ortiz has been selling illegal drugs to support his addiction for ten years. In August 2010, he was convicted of transporting ecstasy for sale. (ECF No. 34 ("PSR") ¶ 27.) Although he was initially sentenced to only 120 days in custody, his probation was revoked in that case when he was convicted in January 2012 of transporting cocaine for sale. (PSR ¶ 28.) He was sentenced to two years in custody concurrent on both cases. (*Id.*) On March 8, 2018, he was arrested again transporting cocaine. (PSR ¶¶ 5-6.) Although he only had 9.17 grams of cocaine in his car, he also had a digital scale and pay-owe sheets documenting the sale of cocaine. (*Id.*) Mr. Ortiz admits that he sells drugs to support his personal addiction. (PSR ¶ 11.)

Because of his three drug felony convictions, Mr. Ortiz is a career offender. (PSR ¶ 19.) Probation calculated his guideline range to be 151–188 months. (PSR ¶ 77.) However, the parties negotiated a favorable plea deal for Mr. Ortiz in which they both agreed to recommend 77 months in custody. (ECF Nos. 40, 42.) The Court followed this recommendation, in part because Mr. Ortiz had done well on pretrial supervision. (ECF No. 46; Defendant's Motion, Exh. H.) Mr. Ortiz self-surrendered to the Bureau of Prisons ("BOP") on June 19, 2019, and, thus, has served almost fifteen months in custody. (ECF No. 47.)

Although Mr. Ortiz noted no major health conditions at the time he was sentenced, he was apparently diagnosed with diabetes upon his entrance to the BOP. (Defendant's Motion, Exh. D.) His health has improved since entering the BOP: both his diabetes and hypertension appear to be well controlled with medications. (Defendant's Motion, Exh. D, at 14, 22 (reflecting Mr. Ortiz's blood pressure has been reduced to 133/88, and he has lost 56 pounds); *see also id.* at 72 (noting weight of 282 pounds upon entering BOP); *id.* at 24 (noting weight of 226 on July 7, 2020).) Nonetheless, Mr. Ortiz's current weight reflects a BMI of 33.4, which is still considered "obese."

On June 23, 2020 and July 15, 2020, Mr. Ortiz requested compassionate release from the Warden at Lompoc where he is being housed. (Defendant's Motion, Exhs. A, C.) The

Warden denied that request on August 5, 2020. (Government's Response, Exh. 3.) There is no evidence that Mr. Ortiz appealed that denial.

## II. ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, after he has exhausted his administrative remedies, if "considering the factors set forth in [18 U.S.C.] section 3553(a)," the court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Ng Lap Seng*, __F. Supp. 3d__, 2020 WL 2301202, at *7 (S.D.N.Y. 2020). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, __ F. Supp. 3d__, 2020 WL 1673440, at *3 (D. Or. 2020).

### A. Exhaustion

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *Ng Lap Seng*, 2020 WL 2301202, at *6 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id*. This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, there is some question about whether Mr. Ortiz exhausted his administrative remedies. His first request made on June 23, 2020, was not acted on within 30 days, although the second request was. Mr. Ortiz did not appeal the Warden's denial of the request. Nonetheless, in this case the Government has waived the administrative exhaustion requirement by asking the Court to consider the substantive merits of the Motion. *See Ng Lap Seng*, 2020 WL 2301202, at *7. Therefore, the Court turns to the substantive issues.

### B.  Extraordinary and Compelling Reasons

Mr. Ortiz argues that he has demonstrated "extraordinary and compelling reasons" for his release, because many of the prisoners and staff at Lompoc have tested positive and one has died. (Defendant's Motion.) According to the BOP, 165 inmates have tested positive, with 163 reported recovered. *See* BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited September 8, 2020). Two of those inmates have reportedly died. *Id.* The BOP also reports that 26 staff members have tested positive, 24 of whom are reported as recovered. *Id.*

Mr. Ortiz argues this high rate of infection places him at risk because of his diabetes, obesity, and hypertension. (Defendant's Motion.) These diagnoses do put Mr. Ortiz at greater risk if he were to contract COVID-19. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020) (providing that people with a BMI over 30 "are at increased risk of severe illness from COVID-19" and people with

hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19").

The Government argues that Mr. Ortiz's relatively young age (early 30s), the fact that he has lost over 50 pounds since entering custody, and the fact that a majority of inmates and staff at Lompoc have recovered from COVID-19 negate Defendant's claim of "extraordinary and compelling" circumstances. The Court need not reach this issue since it finds, as stated below, that the § 3553(a) factors militate against granting the Motion.

### C. The § 3553(a) Factors

In a compassionate release motion, the court must still consider factors listed in § 3553(a), such as: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes; and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

Mr. Ortiz, despite repeated convictions, has continued to sell drugs in the community. Thus, he is a career offender. Neither his previous sentence of two years in custody, nor the fact that he was placed on probation, seem to have deterred him from this criminal activity. Thus, a higher sentence is necessary to promote respect for the law and afford adequate deterrence. The Court has every reason to believe that, if released early, Mr. Ortiz would continue to sell drugs, and that a time served sentence would not protect the public from his further crimes. Finally, a 15-month sentence would create unwarranted disparities with other defendants with similar criminal backgrounds. Mr. Ortiz received a substantial downward departure from the sentencing guidelines when he was originally sentenced to 77 months in custody.

### III. CONCLUSION

Because the Court finds the § 3553(a) factors do not support a reduction in Mr. Ortiz's sentence, despite the fact that he has several high-risk factors including diabetes,

obesity, and hypertension, the Court **DENIES** Mr. Ortiz's motion for compassionate release (ECF No. 51).

     **IT IS SO ORDERED.**

**DATED: September 10, 2020**

Hon. Cynthia Bashant
United States District Judge